ORIGINAL

Approved: _____  
ROBERT ALLEN  
Assistant United States Attorney

U.S. DISTRICT COURT  
FILED  
MAR 0 4 2015  
S. D. OF N.Y.

DOC # 1

Before:   HONORABLE ANDREW J. PECK  
United States Magistrate Judge  
Southern District of New York

15 MAG 675

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

    - v. -

KRISTEN TRAMPLER, and  
DANIEL DAWSON,

           Defendants.

:  **SEALED COMPLAINT**

:  Violations of  
   21 U.S.C. § 846; 18  
:  U.S.C. §§ 1028(a)(7), 2.

:  COUNTY OF OFFENSE:  
   MANHATTAN

:

- - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

      RICHARD PRINCE, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

COUNT ONE

(Conspiracy to Distribute and Possess with the Intent to Distribute a Controlled Substance)

      1.  From in or about December 2011 up to at least in or about July 2014, in the Southern District of New York and elsewhere, KRISTEN TRAMPLER and DANIEL DAWSON, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

      2.  It was a part and an object of the conspiracy that KRISTEN TRAMPLER and DANIEL DAWSON, the defendants, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

      3.  The controlled substance that KRISTEN TRAMPLER and DANIEL DAWSON, the defendants, conspired to distribute and

possess with intent to distribute was oxycodone, in violation of Title 21, United States Code, Section 841(b)(1)(C).

(Title 21, United States Code, Section 846.)

COUNT TWO

(Transferring False Identification With
Intent to Commit Another Crime)

4.    From in or about December 2011 up to at least in or about July 2014, in the Southern District of New York and elsewhere, KRISTEN TRAMPLER and DANIEL DAWSON, the defendants, knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person with the intent to commit, and to aid and abet, and in connection with, any unlawful activity that constitutes a violation of Federal law, to wit, TRAMPLER and DAWSON possessed and used the names and identifying information, including license numbers, of one or more medical doctors to generate false and fraudulent oxycodone prescriptions as part and in furtherance of the violation of Federal law charged in Count One of this Complaint.

(Title 18, United States Code, Sections 1028(a)(7) and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

5.    I am a special agent with the Federal Bureau of Investigation ("FBI"). I have been personally involved in the investigation of this matter. This Affidavit is based upon my participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this Affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

The Scheme

6.    Since at least in or about October 2012, the FBI has been investigating a prescription drug diversion scheme involving individuals believed to have the ability to generate

2

fraudulent prescriptions for oxycodone, which they then fill, cause to be filled, or sell to others.

7.    Based on my training and experience, I know that prescriptions require the names of patients and prescribing doctors in order to be filled by most pharmacies.  Prescriptions generated as part of the scheme are sometimes made out in the scheme participants' own names – in other words, as if the scheme participant were the patient – and sometimes in other persons' names.  In creating these fraudulent prescriptions, scheme participants steal and use the names and identities of prescribing doctors, whose license and DEA registration numbers, among other information, must be included on the prescription in order for it to be filled.[1]

### Creation of Fraudulent Oxycodone Prescriptions

8.    Beginning in or around October 2012, other agents and I began debriefing a confidential source (the "CS") as part of this investigation.[2]  The CS stated, in substance and in part, that the CS knew KRISTIN TRAMPLER and DANIEL DAWSON, the defendants, to be writing fraudulent prescriptions for oxycodone.  The CS further stated that TRAMPLER and DAWSON frequented an apartment located on Thomas S. Boyland Street in

---

[1]  Based on my training and experience, I understand that medical prescriptions generally list, in addition to the information relating to the patient and type of drug to be dispensed, the name, address, and phone number of the prescribing doctor, as well as the prescribing doctor's license number, DEA number, and NPI number.  The doctor's license number is a unique identifier that is generally issued by state agencies that license medical doctors.  The DEA number is a unique identifier that is assigned by the United State Drug Enforcement Administration to any health care provider that dispenses controlled substances.  The NPI, or "National Provider Identifier," number is a unique ten-digit identifier given to health care providers by the United States Centers for Medicare and Medicaid Services.

[2]  The CS has provided information to the FBI in connection with this matter from at least in or around October 2012.  The CS is cooperating with the FBI's investigation in hopes of leniency with respect to possible charges.  Information provided by the CS to date has proven to be accurate and reliable and has been corroborated by, among other things, agent surveillance, recorded calls and conversations, some of which are described below, and information obtained from other sources.

3

Brooklyn, New York, which, according to the CS, TRAMPLER and
DAWSON used as their base of operations (the "Apartment").
According to the CS, TRAMPLER and DAWSON would either cause the
prescriptions to be filled or sell the prescriptions to others
for cash.  The CS stated that the CS knew this based, in part,
on the CS's own involvement in the scheme.

        9.    As part of this investigation, I have learned
that over 40 oxycodone prescriptions amounting to approximately
8,010 pills were filled in the name of a particular patient ("V-
1") between in or around December 2011 and in or around November
2013.  I believe that most or all of these prescriptions were
fraudulently written by KRISTIN TRAMPLER and DANIEL DAWSON, the
defendants.  My bases for this belief are, in part, as follows:

        a.    Based on my training and experience, I know
that the New York Bureau of Narcotic Enforcement ("BNE") tracks
the distribution of prescription medication using information
provided, in part, by pharmacies.  Based on records provided by
the BNE, I have learned that approximately 48 oxycodone
prescriptions were written in V-1's name between in or about
December 2011 and in or about November 2013.  I have also
learned that a particular doctor ("Doctor-1") was listed as the
prescribing doctor on at least six of the oxycodone
prescriptions filled in V-1's name, and that at least eight of
those prescriptions list V-1's address as the address for the
building in which the Apartment is located.

        b.    On or around May 1, 2013, I interviewed
Doctor-1 in the vicinity of Fort Dix, New Jersey.[3]  Doctor-1
stated, in substance and in part, that Doctor-1 did not know V-
1, TRAMPLER, or DAWSON, and that Doctor-1 rarely prescribed
oxycodone.

        c.    As part of the investigation, I was able to
locate video footage from a pharmacy located in Brooklyn, New
York ("Pharmacy-1") showing an individual filling an oxycodone
prescription ("Prescription-1") later determined to be in V-1's
name on or about September 11, 2012.  Based on my comparison of
the individual depicted in this video and surveillance of
TRAMPLER, described in part below, I believe that TRAMPLER is
the person shown filling Prescription-1 in the video footage.

---

[3] Doctor-1 was incarcerated for charges related to health care
fraud.  Doctor-1 agreed to be interviewed in this matter.

d.    On or about April 24, 2013, I interviewed V-1 in the vicinity of Flushing, New York.  V-1 stated, in substance and in part, that V-1 had only filled one or two oxycodone prescriptions in January and/or February 2012, and had not filled any other such prescriptions between in or around 2012 and the date of the interview.  V-1 stated that V-1 did not know Doctor-1 and did not know TRAMPLER.

e.    On or around May 10, 2013, I interviewed a clerk at Pharmacy-1 ("Clerk-1").  Clerk-1 was shown a picture of TRAMPLER, and Clerk-1 indicated, in substance and in part, that Clerk-1 recalled a woman looking like TRAMPLER filling a prescription for oxycodone in the name of V-1.  Clerk-1 also indicated that Clerk-1 remembered TRAMPLER coming to the pharmacy on multiple occasions.

f.    On or around May 14, 2013, I retrieved a copy of Prescription-1 from Pharmacy-1.  Prescription-1 was for 180 30-milligram oxycodone tablets, was made out in V-1's name, and listed a doctor with a practice located in or around New Hyde Park, New York ("Doctor-2") as the prescribing doctor.

g.    On or around May 17, 2013, I interviewed Doctor-2 in the vicinity of New Hyde Park, New York.  Doctor-2 stated, in substance and in part, that Doctor-2 had not written Prescription-1.  I also showed Doctor-2 a prescription written in the name of the CS that was dated on or about September 4, 2012, and that listed Doctor-2 as the prescribing doctor ("Prescription-2").  Doctor-2 stated, in substance and in part, that Doctor-2 had not written Prescription-2.  Doctor-2 did state, however, that the DEA and License numbers listed on Prescription-1 and Prescription-2 belonged to Doctor-2.

10.    On or about May 10, 2013, I interviewed a store clerk at a pharmacy located in the vicinity of Coney Island Avenue in Brooklyn, New York ("Clerk-2" and "Pharmacy-2").  During that interview, I learned, in substance and in part, that pharmacists at Pharmacy-2 had filled seven prescriptions for oxycodone in the name of DANIEL DAWSON, the defendant, as of the date of the interview.  I believe that most or all of these prescriptions were fraudulently written by KRISTIN TRAMPLER and DAWSON, the defendants.  My bases for this belief are, in part, as follows:

a.    Five of the seven prescriptions filled by pharmacists at Pharmacy-2 in DAWSON's name listed Doctor-1 as the prescribing doctor.  Those five prescriptions also included

5

a telephone number and DEA registration number allegedly associated with Doctor-1.  Based on my earlier interview with Doctor-1 as well as the fact that the prescriptions listed a non-working phone number for Doctor-1, I do not believe Doctor-1 wrote those prescriptions.

> b.    The other two prescriptions listed another doctor ("Doctor-3") as the prescribing doctor.  I interviewed Doctor-3 on or about February 7, 2014.  Doctor-3 stated, in substance and in part, that Doctor-3 had never treated DAWSON.

### Sale of Fraudulent Oxycodone Prescriptions

> 11.   On or about September 5, 2013, the CS met with KRISTIN TRAMPLER and DANIEL DAWSON, the defendants, in the vicinity of the Apartment.  The meeting occurred at the direction of law enforcement and was recorded with the consent of the CS.  Based on my conversations with the CS and my review of recordings, I understand the following, in substance and in part, to have occurred around the time of the meeting:

> a.    Before the meeting, FBI agents provided the CS with approximately $350.

> b.    Both TRAMPLER and DAWSON were present in the Apartment during the meeting.  The CS paid DAWSON approximately $350 and received from TRAMPLER a prescription for approximately 120 30-milligram tablets of oxycodone.  The prescription listed a particular doctor ("Doctor-4") as the prescribing doctor, and included an address as well as license, DEA number, and NPI number allegedly associated with Doctor-4.

> c.    After the meeting, the CS gave the prescription that the CS had obtained during the meeting to law enforcement.

> 12.   On or about June 5, 2014, the CS called DANIEL DAWSON, the defendant, at the direction of law enforcement.[4]  The call was made from Manhattan and recorded with the CS's consent.  During the call, the CS asked DAWSON, in substance and in part, whether DAWSON knew anyone from whom the CS could buy prescriptions for oxycodone. DAWSON responded, "only through us"

---

[4] The CS knew both KRISTIN TRAMPLER and DANIEL DAWSON's phone numbers based on the CS's prior relationship and interactions with them.

and told the CS that he "could make [the CS] one."[5]

13.   On or about June 12, 2014, the CS called DANIEL
DAWSON, the defendant, at the direction of law enforcement.  The
call was made from Manhattan and recorded with the CS's consent.
During the call, the CS stated, in substance and in part, that
the CS was calling DAWSON "about getting that script."  The CS
then asked what the price for the prescription would be, and
DAWSON responded, in part, "Kristin is doing all the charging
and shit ...."

14.   On or about June 25, 2014, the CS called DANIEL
DAWSON, the defendant, at the direction of law enforcement.  The
call was recorded with the CS's consent.  During the call, the
following exchange occurred between the CS and DAWSON:

CS:   About that ... that script. Tomorrow?
DD:   Tomorrow?
CS:   Tomorrow, in the morning.
DD:   OK.
CD:   Alright, about 10:30 tomorrow.
DD:   10:30.  OK but you got to ... you need to give me the
      information now.
CS:   Oh, oh, oh, oh, the name.

The CS then told DAWSON, in substance and in part, that the CS
would call DAWSON back with the name for the prescription and
terminated the call.  Later that day, the CS called DAWSON at
the direction of law enforcement.  The call was recorded with
the CS's consent.  A voice the CS recognized as KRISTIN
TRAMPLER, the defendant, answered.  The CS then said, in part,
"for tomorrow, just put my, do my, put my name on it."

15.   On or about June 26, 2014, the CS met with
KRISTIN TRAMPLER and DANIEL DAWSON, the defendants, at the
Apartment.  The meeting occurred at the direction of law
enforcement and was recorded with the consent of the CS.  Based
on my conversations with the CS and my review of recordings, I
understand that DAWSON and TRAMPLER told the CS, in substance
and in part, that the printer they used to print prescriptions
was not working (e.g., "KT: Ink is not coming on the paper.  We
just spent money on new ink....").

16.   On or about July 2, 2014, the CS called DANIEL

---

[5] Quotes from recordings are from either preliminary translations
of recordings and/or based on my review of audio recordings.

DAWSON, the defendant, at the direction of law enforcement.  The call was recorded with the CS's consent.  During the call, the CS asked, "Yo, we still on for today?"  DAWSON responded "yeah," and added, in part, "I told her last night ... [to] have it for you in the morning."  The CS subsequently called KRISTIN TRAMPLER, the defendant, at the direction of law enforcement.  The call was recorded.  TRAMPLER told the CS, in substance and in part, "I got it for you."  Based on my familiarity with this investigation, I believe both DAWSON and TRAMPLER were referring to a prescription for oxycodone pills by referencing "it."

      17.  On or about July 2, 2014, the CS met with KRISTIN TRAMPLER, the defendant, in the vicinity of the Apartment.  The meeting was recorded with the consent of the CS.  Based on my conversations with the CS and my review of recordings, I understand the following, in substance and in part, to have occurred around the time of the meeting:

      a.  Before the meeting, FBI agents provided the CS with approximately $300.

      b.  TRAMPLER approached the vicinity of the Apartment in a vehicle.  The CS subsequently entered TRAMPLER's vehicle.

      c.  While in TRAMPLER's vehicle, the CS gave TRAMPLER approximately $300.  TRAMPLER gave the CS a prescription for 90 30-milligram oxycodone pills.  The prescription listed a particular doctor ("Doctor-5") as the prescribing doctor, and included an address as well as license, NPI, and DEA numbers allegedly associated with Doctor-5.

      d.  After the meeting, the CS gave the prescription that the CS had obtained during the meeting to law enforcement.

8

WHEREFORE, I respectfully request that an arrest warrant be issued for KRISTEN TRAMPLER and DANIEL DAWSON, the defendants, and that they be arrested and imprisoned or bailed, as the case may be.

RICHARD L. PRINCE
Special Agent
Federal Bureau of Investigation

Sworn to before me this
4th day of March, 2015

THE HONORABLE ANDREW J. PECK
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

9